14-3422 Nasco Cabinetry Middlefield v. CEFLA North America Good afternoon, your honors. Brian Cunningham representing the plaintiffs' appellants, Nasco Cabinetry Middlefield and the insurance company, its insurer, the insurance company of the state of Pennsylvania. I've reserved five minutes for rebuttal. Please proceed. Your honor, we're here to ask for the reversal of the district court's granting of summary judgment in favor of the defendants, CEFLA North America and CEFLA SC. The judges, it's our position that the district court's ruling really could have only been properly granted on three bases, and that is the first one is if the defendant's appellees were direct parties to the sales contract at issue, in which case they could have invoked the protections of that contract, including limitation provisions and statute of limitation defenses. Even if it were a tort action? Even if it were a tort, yeah. If they were a direct party. You concede then that the contract would have covered any kind of tort action as well as any kind of contract action. We do, we do. So discovery, the normal rule that in order to apply the statute of limitations for tort actions, you need a discovery principle. You're not arguing that? No, our position is that if they are properly considered to be parties to the contract, sufficient to invoke all the protections, whether they choose a limitation, statute of limitation defense, limitation of damages defense, if they are legally and factually qualified as a party under the law, that is correct, that they were time barred. So let's get this first question out of the way right to start with. You bring an action that's a tort action. Correct. You don't really pursue that in any of the briefs as far as tort law. It's always analyzed under contract law, but you never actually concede in the briefs that we should be analyzing this as an action sounding in contract. So can we get that out of the way? This is a contract case, even though you pled it as a tort case. Do you agree with that? No, I agree. Why don't you? It's a tort case. It's odd then that you don't mention tort law one single place anywhere in your briefs. Well, I don't think it's relevant to this case, because the contract as written, if they qualify as parties to that contract. You just said if it's a contract case and if these other parties are a party to the contract, you lose. That's correct. A contract can govern. So, of course, it's relevant. You're saying that the underlying action is a tort case, but the issue before us is a contract issue. That's correct. Okay. I guess where I get lost is I'm not sure. I mean, you're coming in here saying there are only three ways they can win. Either they're a direct party to the contract, they're a third-party beneficiary, or there's an agency agreement. And honestly, I don't understand the concession, because if I understand it correctly, the portion of the contract that they're relying on is that page of the national agreement that refers to the warranty limitations, right? Right. And that's all about Stiles. That's exactly right. That's our point. But that's not your point. I don't understand. So let's say they are an agent. What's the agreement? The agreement is a limitation of Stiles' liability. I'm glad you brought up the agency issue, because the first two bases where I was going to go with it is it's undisputed, I think, and counsel would agree that they didn't sign the contract. They're not a direct party to the contract. What is the contract? What are you claiming is the contract? The Masco-Stiles sales agreement. The purchase order. It's a Stiles. I don't know if you'd call it a purchase order. Well, that's what it's called. Okay. Okay. Purchase order with terms. The purchase order isn't signed by anybody on the other side. It doesn't bear a signature. Of the defendant, appellants? Yes. That's correct, yes. It names the Stiles representative, this Bob Langrey, but he doesn't sign it. So for you to have a contract with somebody, it's got to be something more than the purchase order. No, it's signed by a Stiles representative. Not in the purchase order. Don Cox and he's named. It's not signed. Can I pull it? Sure. Yeah, if I'm wrong about that, I'd like to know that. Up top on the right corner, prepared by Bob Langrey. That's right. Prepared by, printed the name Bob Langrey. It's not a signature. The signatures are at the bottom. Let's assume that it was signed, which it's not. If you look at the purchase order, just that document, without any other documents, can you determine what the essential terms are of this agreement? No, you have to go outside the document. No, you don't go outside it. You look at what's attached to it and incorporated in it, right? I disagree. I think the first thing you have to look at are their handwritten terms, which clearly say that the terms and conditions that apply are the current purchasing agreement with Stiles Machinery, which was an ongoing agreement. That's how they did business. Am I right that the standard terms and conditions from Stiles are attached to the sales agreement? They're in the record. You're correct. And am I right that the CEPHLA finishing America standard terms and conditions are also attached? That, I don't know. There's one page. Your Honor, if I can finish. There's one page. One page can have one backside. There's two identical terms and conditions. One is Stiles, which would appear logically to go with a Stiles purchase order. The other is CEPHLA, which, if I'm guessing, was probably attached. It was in the record this way. I'm not disputing that. It was kept by our clients that way. The bait stamps on the bottom are MASCOs, right? Yes, yes. So 330, 331, 332. That's correct. Did you dispute that the CEPHLA document is attached to the sales agreement? How can it be attached as a backside? It may have been submitted with. How about a staple? That would be a clever way to do it. Or a paperclip. That's not the backside. But I get your point, Your Honor. What I'm acknowledging, yes, they were in the record. They were produced by my client in succession and kept in their records as. . . Okay. Now we've got this Bob LaMancher, or whatever his name is. He's the Stiles guy, right? Yes. And he's dealing. . . He doesn't make anything. The only way he can sell you a piece of equipment from this company in Italy is if he's an agent for them, right? I mean, I suppose he could go out and buy it himself. That's the whole question, is whether or not he's an agent. And our position is that there's a number of facts that show that he is. There's a number that show that he isn't, including the key. . . What I think is the key document is the quote-unquote agency agreement between one of the appellees and Stiles. And in that agreement, it specifically says, you know what, you're not an agent. You're an independent contractor, and you cannot bind us contractually. It doesn't say he's not an agent. It says he is not a, quote, legal representative, unquote. Now, I mean, you can say that they are one and the same, but was that established in this record? I think that's one of the disputes, whether or not they were an authorized agent. They certainly, if you look at the provision in that contract that says, you, Stiles, are not authorized to obligate us. In other words, you can't go out and sign a contract and say that you represent us and put our name to it. That's my reading of it, and I think that's a very reasonable reading of it under the appropriate standard of review. Let me just tell you, and I have a lot of respect for Masco. I mean, I know that company is a Michigan company. I don't know anybody personally. This just seems like such an incredibly tortured argument, where you're dealing with Stiles. You know he's going to provide you with this stuff that's made in Italy. That's what you want. You just don't want any old oven or whatever this is that Stiles could go procure at an oven store, right? Correct. So then you say, geez, these other parties, we don't have anything to do with these other parties. It just doesn't even pass as smelt dust. Let me pose this, and it's in the case that JS held, I believe it is. But if, in fact, Stiles is an agent, and they're merely up there as a straw man for CHEFLA, and they're just signing it, everything, and entering into a contract on behalf of CHEFLA, what good is the warranty that's written into the contract? Masco has a warranty with Stiles. Stiles warranty the equipment. Title was with Stiles. What good is all that? Then they have no recourse. What if within that year period they had a warranty issue come up? Not a catastrophic loss like this, but a warranty issue. Who are we going to sue? Who is Masco going to go after? They go after Stiles. Stiles comes back. I'm not. We're just an agent. They point over to CHEFLA. CHEFLA points back and says, tough, we didn't sign it. So there are a lot of questions here, and that's a dilemma, too. Appellees point to some absurd results if you follow down one path, but that's an example here. Before you leave, let me ask you a question. Go ahead. Finish, though. That's fine. You represent both the insurance company and Masco, is that right? Correct. And how much was the insurance proceeds paid to the company after the fire? The total claim was $4.6 million. The deductible or uninsured loss was $1 million. So Masco received $3.5, so that's the subrogation portion. The uninsured loss is approximately. Received $3.5 million, more or less. Right. Approximately. Why are you conceding? I'm going back to what I don't understand. Why are you conceding that agency is dispositive when the contract limitations only apply to Stiles? I'm just missing something. I'm conceding that the only basis that the trial court's ruling is correct is if there was, as a matter of law, that Stiles was merely the agent of the defendants when it entered into the contract. That is a legal doctrine, and there are facts that go back and forth. I'm not going to. I'm just trying to get. So what? Let's say they are an agent. How does that help CHEFLA when the limitations are couched in terms of Stiles? Well, I mean, that's exactly right. Our position is that Stiles was the only contractee to this contract, the only party to it. And the terms and conditions in the National Sales Agreement and one of the boilerplate terms and conditions referenced by Judge McKeague is Stiles, talks in terms of Stiles. But then you have that third one with CHEFLA into it. Our whole point in this is that. But that goes to a different issue. That goes to whether the handwritten stuff on the front trumps the attachments. Okay. Counsel, let me just ask you this. My understanding is your conception of this case, your theory, is that the only way you can win the case is to get rid of the two-year limitations period. And the only way you can get rid of the two-year limitations period is to say that the contract was not with the manufacturer but only with Stiles. Correct? Our point has been that all along. We're not suing for breach of contract. That's all I want to know. Thank you. All right. Thank you. Counsel, you'll have your rebuttal. Thank you. Good afternoon. May it please the Court, my name is Sean McGinnis, and I'm here on behalf of CHEFLA North America and CHEFLA SC. Pardon me. And we are the appellees in this matter. You've got to admit that your plan to have a name that people recognize do business for you in the United States didn't exactly help us here, right? That being Stiles? Right. Well, that certainly complicated the matter. I would certainly agree with that. I think ultimately the appeal is, however, about whether MASCO can ignore its bargain from 2004. Now, they have found an argument by which they've attempted to do so by trying to make CHEFLA the company with which they negotiated, the company which visited them, the company which designed this. What's the bargain from 2004? I'm sorry. The sales agreement? Yes. Okay. And that that was the culmination of a process which is set out in the record by which Stiles began a relationship by which CHEFLA, which had sold other equipment to MASCO, came in, determined what MASCO's needs were, spoke with the production managers, looked at the floor plan, and determined. Okay. Tell me where I'm wrong, okay? I look at the contract, and it very clearly, in the handwritten language on the front, says that the terms and conditions that are going to govern this relationship are that national agreement. Clear as day, it says that. So then I look to the national agreement, and there's a warranty statement in it, and I think that's what you're relying on. And that warranty statement talks about Stiles' liability. Your Honor, just so I can clarify, the document we're looking at, is this the boilerplate on the back of the document, on the back of the sales agreement? Are we talking about the national sales agreement? No. Well, let's go back to my first thing. The first thing I said is that very clearly written on the front, it says that it's the terms and conditions of the national agreement that are going to govern this relationship. That is certainly one of the documents that is incorporated, yes. That's right. So let's say that because of that, and because that's the specific language, we ignore the terms of conditions, the printed. Then we say, okay, let's look at the national agreement, because that's what everybody agreed was going to govern. So you look at the national agreement, and as I understand it, there is a warranty statement in there that your client is relying on. My client is relying on the warranty statement and the CHEFLA terms and conditions, Your Honor. I see. That helps a lot. So if we conclude that the CHEFLA agreement doesn't apply, do you concede that you lose? No, because we still have the CHEFLA proposal, which also includes warranty language. The CHEFLA proposal, actually, I take that back. Both the sales agreement and the CHEFLA proposal, which is incorporated in the sales agreement, point to the CHEFLA terms and conditions. Okay. If the court were to determine, for whatever reason, that the CHEFLA terms and conditions pointed to by both of these documents does not apply, then yes, we are not relying on anything in the Stiles-Masco agreement to make our point. Okay. So if we conclude that the national agreement applies and the national agreement says that references to the product really only refer to the product and not the terms and conditions, then you concede that you lose? If the conclusion is that those are the exclusive terms that govern the agreement, yes. Thank you. That has really clarified a lot for me. I suppose you can get to where you want to get in two ways, can't you? The language that Judge White is pointing to that's handwritten on the sales agreement says that the MASCO terms and conditions apply. It doesn't say they're exclusive. It just says they apply. Because right below it, below the signature, says this order is subject to the terms and conditions prudent on the reverse side. That's also correct. And the CHEFLA proposal, which also includes a requirement that its proposal is subject to the CHEFLA terms and conditions, is also incorporated in the machinery description portion. The problem with that argument that Mr. Cunningham was trying to make is that reverse side can only have one side and that it's the styles language that was on the reverse, not this stray piece of paper that's the CHEFLA standard terms and conditions. So how do you get that in to be attached to the sales agreement? There is no witness who has come forward and said, I saw this document altogether. The reason why this document has been presented as altogether and has not been contested on summary judgment as being altogether is because it was produced as it was kept in the course of business. These terms and conditions, as you can see, are exactly identical except for the fact that one of them has styles as the beneficiary and the other one has CHEFLA finishing. So they're part of the agreement because it says CHEFLA terms and conditions apply. The CHEFLA proposal, rather, which is incorporated, says the CHEFLA terms and conditions apply and they just happen to be attached to this document. So then the other way you win is if styles was actually acting as the agent for CHEFLA throughout this transaction. That's correct. How does that translate into your winning? In terms of the terms and conditions? I'm sensing that you're asking me again if I'm trying to rely on the styles, terms and conditions, through styles as my agent. But you're not, you said. That's correct. Okay. So how does the agency issue help you or is that just something that the plaintiff threw out? The agency issue makes me a party to this contract, Your Honor. In other words, I acknowledge that there's no signature by CHEFLA on this document. I think that this contract comes about because it is an acceptance of the CHEFLA proposal. I think that it is clear, but that is why agency comes in. So it comes in, it's relevant, assuming that the contract includes the CHEFLA terms and conditions. Okay. That makes sense. Counsel, do you think that the only way you can win in the case is to get the two-year statute of limitations? No, Your Honor, I do not. In addition to the two-year statute of limitations, if . . . There is also the standard four-year limitations period under Michigan law. In addition to that, there are other . . . On that point, would there be a discovery exception in there that if you can't discover it, if it's a tort action, and you can't discover it because the fire hadn't occurred yet, that would delay or the statute of limitations wouldn't accrue or start running until afterward under Michigan law? I don't believe that it would, Your Honor, because I believe it would be akin to the statute of limitations applicable in UCC actions where there is no discovery rule and where the limitations period begins when the sale is completed. I mean, this is a contract issue. This is a UCC issue, so I think that would be the proper way to interpret the limitations period. He's never made that argument. That's correct. Ultimately, in terms of why this summary judgment should be upheld is in addition to . . . I think that the terms of the contract are clear. I understand that appellant does not like the terms and does not like the fact that all these terms are expressly incorporated, but they are, and appellant has not put forward any reason why this court should pick and choose between three expressly incorporated documents. That does not pose an issue because the three material points here, which are what law applies, which are what is a contractual limitations period, and which are whether there's any prohibition on consequential damages, all these documents are in agreement, all these documents being the Stiles-Masco terms and conditions and the Chafla terms and conditions, so there's no conflict issue there. In terms of agency, again, there was express agency. The agency agreement is in the record in addition to the express agency, which was clearly authorized by Chafla, which signed the proposal, which is incorporated in the sales agreement. There's also the issue of whether Chafla is in privity, given its degree of involvement here. This is not an arm's-length transaction. This was a year-long process where Chafla is in Middlefield, Ohio, meeting with production managers, meeting with folks who are going to be operating this line, determining what Masco needed. The one regret I have about the record here is that there's no diagram of the actual line because this is a 30-machine-long U-shaped line with a curved conveyor belt. It's a pretty impressive thing, and it was built for Masco's precise specifications, so to portray Chafla as a stranger to this agreement is completely unbelievable. And I think that as an illustration of that, if we look at the scenario which we have in many of these cases, like the Bob Forrest Products case or the Mettler case, where you have someone in Chafla's position disclaiming any warranty liability, that wouldn't fly. Chafla was clearly involved in this transaction. There's no way that that would pass the straight-face test for them to say, well, it was Stiles' deal, not ours. I mean, the level of involvement where Chafla personnel are going to Masco, the fact that the Chafla proposal was directed at Masco, directly bypassing Stiles, illustrates that. Well, Mr. Cunningham says that Masco was used to buying things from Stiles that were titled in Stiles' name, and then he sold them to Masco. Now, presumably Stiles got whatever these other pieces of equipment were from somebody else, so why couldn't that also have been what the parties were envisioning here? Well, that's not what happened. The Chafla proposal states that, and actually the sales agreement on its face also states, that all shipments will be made directly to Masco at Middlefield. This is not a case where Stiles takes title and passes it on. That's just a dropship clause. What difference does that make? Well, and then Chafla is also installing the property, installing the equipment. There's really no involvement of Stiles in terms of the finalization of the transaction. Stiles certainly facilitated the transaction. They earned their commission on this transaction. It was the biggest transaction that Chafla had that year, but Stiles did not act as a middleman in terms of taking title to this property and then passing it on to Masco as some sort of a stranger to the contract. I guess finally the one thing I would address is Appellant's argument that Chafla SC is somehow a stranger to this contract because its name does not appear on the Chafla proposal. I guess first off, this argument was never made at the summary judgment stage. Appellants referred to the Chafla entities as Chafla throughout, and they made that clear. Substantively, Chafla SC is the parent company of Chafla North America. There's no machines unless you have Chafla SC making them. Chafla North America is at that time engineers and designers. Nobody's building anything at Chafla North America. It's all coming from Italy. That's clear throughout the contract documents, and that's clear throughout the dealings with Masco. And finally, I would point out that the proposal for this system names it the Chafla Group roll-quote system. The Chafla Group is Chafla North America and Chafla SC. It's clear that Chafla SC's involvement was no surprise to anybody, and had they not been involved, Masco wouldn't have got anything. Thank you. That's all I have, and I would request that the Court affirm the summary judgment. All right, thank you. Mr. Cunningham? Yes, Your Honor. It's just a very brief rebuttal. Mr. Cunningham, let me ask you one question, just as a matter of curiosity. What is your tort claim exactly? It's a product liability and a negligence claim. I understand, but what are you claiming was the negligence on the part of the manufacturer? It's a cooling tunnel, so it's about 30 or 40 feet long, maybe off a little bit, by about four or five feet high and six feet wide. The conveyor runs through it. And our position is that it was made of combustible materials when noncombustible materials are available. It didn't have fire protection in the plant, but because it's enclosed. It was altogether a design defect. Yeah, there were a couple levels to it. The basic idea is that they should have put other materials in that would not burn. Right, and also lack of dust, a proper dust collection system. So wood dust is prevalent. So what you would do if you were going to try to prove the tort, so to speak, is bring in evidence of other designs that are better? One example, yes. Okay, thanks. One of the things that counsel said is that there is no conflict between the various terms and conditions that have been thrown out there. That, I believe, is completely erroneous in one respect at least. And if you look at the sales agreement, again, you have MASCO terms and conditions apply according to the current national purchasing agreement with Stiles Machinery, handwritten and signed by Don Cox from MASCO, prepared by Bob Langridge with his sign up top to the right. And if you look on the national sales agreement in the record, pages 319 and 321, their ongoing understanding, it says specifically that if there are any backside terms and conditions like this on Stiles' paper, it's to be given no effect, no effect whatsoever. That's the national purchasing agreement? Yeah, the national sales agreement, purchasing agreement. Which paragraph are you looking at there? It's the third paragraph on page 319, which is the first page. I believe it's the third paragraph. I don't have it in front of me, but I'm going from memory. Was there any testimony regarding the understanding between Stiles and MASCO as to the printed material? Other than, I'm talking about testimony, not just this contract. There was real brief testimony affidavit-wise that got into the relationship of the national between the parties because it wasn't touched on in depth. So in response to summary judgment, we submitted it in that form. A Stiles representative was not deposed by either party. Okay, but someone from MASCO said that the understanding was that our standard terms and conditions would apply, notwithstanding anything printed on there. Their understanding is consistent exactly with the sales agreement that the national sales agreement governed, and it was a longstanding agreement for four or five years between the parties that was to apply to all purchases by MASCO from Stiles. Pardon me, I'm getting over a cold. Okay. All right, anything else? Nothing further, and for all those reasons, we ask that this panel reverse the lower court's opinion. All right, thank you. The case will be submitted. Thank you, Your Honor.